SLR:MJG:MDH          CV 15          7306

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA,

              Plaintiff,                                 **COMPLAINT**

    - against -                              Civil Action No.

TRUMP VILLAGE SECTION IV INC. and IGOR
OBERMAN,

              Defendants.                          **GARAUFIS, J.**

                                             **KUO, M.J.**
-------------------------------------------------------------------X

      Plaintiff, United States of America, by its attorney, Robert L. Capers, United States

Attorney for the Eastern District of New York, Melanie D. Hendry, Assistant United States

Attorney, of counsel, for its complaint against defendants Trump Village Section IV Inc.

("Trump Village") and Igor Oberman (collectively, the "Defendants"), alleges as follows:

## INTRODUCTION

      1.     Between approximately May 2012 and March 2015, Defendants engaged in a

pattern or practice of discrimination against residents of Trump Village in Brooklyn, New York.

On four separate occasions, defendants refused to allow Trump Village residents with disabilities

to keep emotional support dogs in their apartments, in violation of the Fair Housing Act, 42

U.S.C. § 3604. Defendants also have retaliated against three of these residents and their family

members for attempting to enforce their rights under the Fair Housing Act by, *inter alia*, denying

them preferred parking spaces, threatening to evict them from their homes, and removing one

resident from Trump Village's Board of Directors.

## JURISDICTION AND VENUE

2.     The United States has authority to bring this action pursuant to 42 U.S.C. § 3612(o) and § 3614(a).  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 3612(o) and § 3614(a).

3.     Venue is proper pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 3612(o).

## PARTIES

4.     Plaintiff is the United States of America.

5.     Defendant Trump Village is an approximately 1,144-unit cooperative apartment building located at 2928 West 5th Street, Brooklyn, New York.

6.     From at least January 2012 to date, defendant Igor Oberman ("Oberman") has been a member of Trump Village's Board of Directors.

7.     Eugene and Galina Ovsishcher, Nicole Sable Bell, and Neil and Inna Lomanov (collectively, the "Aggrieved Residents") reside in apartments at Trump Village.

8.     The Aggrieved Residents' apartments constitute "dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b).

9.     The Aggrieved Residents are "aggrieved persons" as that term is defined in the Fair Housing Act, 42 U.S.C. § 3602(i), and have suffered damages as a result of the Defendants' conduct.

## FACTS

**Trump Village's No Pet Policy**

10.     Trump Village has historically prohibited its residents from keeping animals in their apartments.  It does not have any policies or procedures for its residents to request reasonable accommodations to permit them to keep emotional support animals.

2

11.     Despite Trump Village's general prohibition on having animals in apartments, some residents of Trump Village have been permitted to keep dogs. However, Trump Village has imposed several requirements upon dog owners, including: (a) requiring annual registration of the dog, (b) assessing a $50 fee each year, (c) requiring the owner to provide a DNA sample from their animal, and (d) prohibiting dogs weighing more than 35 pounds (the "Animal Rules").

12.     The Animal Rules permit Trump Village's Board of Directors to unilaterally determine whether a particular animal is suitable to be kept by the resident.

**History of Complaints Against Trump Village**

13.     From approximately May 2012 through March 2015, four residents of Trump Village filed administrative complaints with the United States Department of Housing and Urban Development ("HUD") because Trump Village violated the Fair Housing Act by refusing to allow them to keep their emotional support dogs (the "HUD Complaints").

14.     The HUD Complaints were filed by Eugene and Galina Ovsishcher, Nicole Sable Bell, Neil and Inna Lomanov, and Barbara Snyder.

15.     Ms. Snyder's complaint was resolved through the HUD conciliation process in approximately July 2013, and the terms of the settlement were memorialized in a conciliation agreement.

16.     Under the terms of that settlement, Trump Village agreed that it would accommodate individuals with disabilities, including individuals who required emotional support animals, and comply with the Fair Housing Act. Its board members and managers also agreed to participate in HUD-provided training concerning the requirements of the Fair Housing Act.

17.     In approximately December 2013, HUD provided Fair Housing Act training to multiple members of Trump Village's Board of Directors and management company, including defendant Oberman.

3

18.     Notwithstanding the terms of the settlement of Ms. Snyder's HUD complaint, Trump Village's Board of Directors failed to implement reasonable accommodation policies or procedures.

19.     Even though they received training and agreed to comply with the Fair Housing Act, as detailed below, following the training, Defendants refused to allow two residents to keep their emotional support animals and retaliated against those individuals for attempting to enforce their rights pursuant to the Fair Housing Act.

**Defendants' Refusal to Grant Reasonable Accommodation to Eugene Ovsishcher**

20.     Since approximately 2009, and at all times relevant herein, Eugene Ovsishcher has resided at Trump Village.

21.     Mr. Ovsishcher is a veteran of the United States Army who has post-traumatic stress disorder ("PTSD") as a result of his military service. The symptoms of his PTSD included insomnia, a high level of anxiety, and a fear of being alone.

22.     As such, Mr. Ovsishcher is an individual with a mental impairment that substantially limits one or more of his major life activities. He thus qualifies as a person with a disability under the Fair Housing Act, 42 U.S.C. 3602(h).

23.     In approximately August 2011, upon the recommendation of his physicians, Mr. Ovsishcher obtained an emotional support dog.

24.     In approximately February 2012, Anna Richter, an administrative assistant working in Trump Village's management office, advised Mr. Ovsishcher and his wife, Galina, that they were required to register the dog with the management office and provide, *inter alia*, a letter explaining Mr. Ovsishcher's medical need for an emotional support dog.

25.     While the Ovsishchers were in the process of compiling the information requested by Ms. Richter, on or about February 8, 2012, Trump Village sent them a "Notice to Cure"

4

which stated that they were in default of their proprietary lease because they were "harboring a dog in violation of [the] occupancy agreement," and giving them ten days to cure their alleged default. The Notice to Cure further provided that if the alleged default was not cured within ten days, Trump Village "may thereupon terminate the lease."

26.     Soon after receiving the Notice to Cure, the Ovsishchers provided Trump Village with the information requested about Mr. Ovsishcher's emotional support dog, including a letter dated February 4, 2012 from Mr. Ovsishcher's doctor confirming that Mr. Ovsishcher has PTSD and that his dog aids in Mr. Ovsishcher's recovery and reduces his symptoms.

27.     Defendants did not request any additional information from the Ovsishchers concerning Mr. Ovsishcher's medical condition or his medical need for an emotional support dog.

28.     On or about March 1, 2012, Trump Village sent the Ovsishchers a "Notice of Termination" which stated that their lease "is hereby terminated effective March 20, 2012." The Notice of Termination further stated that: "you are required to up and quit the premises and to remove yourself and your possessions on or before [March 20, 2012]."

29.     On or about March 27, 2012, Trump Village commenced a holdover proceeding against the Ovsishchers in Civil Court of the State of New York, County of Kings, alleging that the Ovsishchers' proprietary lease had been terminated and seeking a judgment awarding possession of the Ovsishchers' apartment to Trump Village and issuance of a warrant to remove the Ovsishchers from their home.

30.     On or about June 19, 2012, Judge Kimberley S. Moser of the Kings County Civil Court dismissed Trump Village's holdover proceeding, without prejudice, based upon a procedural defect caused by Trump Village's acceptance of rent from the Ovsishchers during the

"window period" subsequent to the alleged date of termination of their lease and prior to commencement of the holdover proceeding.

**Defendants' Retaliation Against Eugene and Galina Ovsishcher – Denial of Parking Space**

31.    Trump Village has two parking lots with a total of approximately 949 parking spaces to serve its approximately 1,144 apartments.  One lot has approximately 249 parking spaces (the "transit lot"), while the second lot has approximately 700 parking spaces (the "main lot").  The main lot is closer to Trump Village than the transit lot.

32.    New Trump Village shareholders are first assigned a parking space in the transit lot and are placed on a waiting list for a parking space in the main lot.  Parking spaces in the main lot are assigned to the shareholder who is highest on the waiting list at the time a parking space becomes available.

33.    In approximately September 2009, when they purchased their apartment, the Ovsishchers were placed on the waiting list for a parking space in the main lot.  As of May 2012, the Ovsishchers were third on the waiting list.

34.    However, after the Ovsishchers made a reasonable accommodation request, Defendant Oberman directed that the Ovsishchers' position on the waiting list be frozen.  As a result of Defendant Oberman's directive, at least one shareholder who was lower on the waiting list moved ahead of the Ovsishchers and was given a parking space before them.

35.    Defendant Oberman directed that the Ovsishchers' position on the waiting list be frozen because Mr. Ovsishcher exercised his right to obtain reasonable accommodation under the Fair Housing Act.

36.    The Ovsishchers did not receive a parking space in the main lot until approximately October 2014.

**Defendants' Retaliation Against the Ovsishchers – Removal From Board of Directors**

37.     In approximately June 2012, Galina Ovsishcher was elected to Trump Village's Board of Directors (the "Board").

38.     By notice dated August 13, 2012, Defendant Oberman advised that a special meeting of the Board would be held to "consider and vote upon a resolution for the removal for cause" of Galina Ovsishcher from the Board. The notice listed "commencing legal proceedings against the corporation" as one of the purported reasons for her removal.

39.     On or about August 17, 2012, the Board voted to remove Galina Ovsishcher as a member.

40.     The Board voted to remove Galina Ovsishcher at least in part because Mr. Ovsishcher exercised his right to obtain reasonable accommodation under the Fair Housing Act.

41.     The Ovsishchers have incurred substantial legal fees in connection with their opposition to Defendants' refusal to grant Mr. Ovsishcher reasonable accommodation and Defendants' retaliation against them. Additionally, Defendants attempted to force the Ovsishchers to pay the legal fees Trump Village incurred in connection with its improper acts.

**Defendants' Refusal to Grant Reasonable Accommodation to Nicole Sable Bell**

42.     Since approximately 2011, and at all times relevant herein, Nicole Sable Bell ("Ms. Bell") has resided at Trump Village.

43.     Ms. Bell has severe stuttering which affects her daily functioning and emotional state. As a result of the stuttering, Ms. Bell experiences anxiety, stress, shame, self-imposed isolation, and feelings of loss of control during speech. When she is calm and relaxed, it is easier for her to speak.

44.     As such, Ms. Bell is an individual with a mental impairment that substantially limits one or more of her major life activities.  She thus qualifies as a person with a disability under the Fair Housing Act, 42 U.S.C. 3602(h).

45.     For the entire time she has resided at Trump Village, and for many years prior, Ms. Bell has had an emotional support dog.

46.     On or about December 15, 2014, Trump Village served a "Ten Day Notice of Termination" which stated that the lease for Ms. Bell's apartment "is hereby terminated effective January 5, 2015" as a result of a "default of a substantial obligation of the proprietary lease." The Notice of Termination further stated: "You have been found to be keeping, harboring, and permitting occupation in the demised premises a domestic animal identified as a dog contrary to the express terms of the proprietary lease."

47.     On or about January 8, 2015, Ms. Bell provided Trump Village with a letter from her physician explaining her medical need for the dog.  The letter states, *inter alia*, that Ms. Bell has a lifelong disability of severe developmental stuttering which in incurable and cannot be treated with medication. The letter further states that Ms. Bell, who is now in her 20s, has had an emotional support dog since the age of 9 and that an emotional support dog is a critical part of Ms. Bell's therapy which cannot be substituted by any other means and without which Ms. Bell would not have full enjoyment of her life and home.

48.     After receiving Ms. Bell's physician's letter, Trump Village did not withdraw the Notice of Termination or advise Ms. Bell that she would be granted a reasonable accommodation.

**Defendants' Retaliation Against Nicole Sable Bell**

49.     Before Ms. Bell moved into the apartment, members of her family lived there for more than 20 years.  During that time, a license was issued by Trump Village assigning a parking space to the apartment.

50.     More than a month after receiving Ms. Bell's physician's letter explaining her medical need for an emotional support dog, Trump Village served a "Licensee Notice to Quit" dated February 17, 2015.  The notice stated that the license for use of the parking space was terminated as of March 27, 2015.

51.     Trump Village terminated the license for the parking space because Ms. Bell exercised her right to obtain reasonable accommodation under the Fair Housing Act.

52.     Ms. Bell has incurred substantial legal fees in connection with her opposition to Defendants' refusal to grant her reasonable accommodation and Defendants' retaliation against her.

**Defendants' Refusal to Grant Reasonable Accommodation to Inna Lomanov**

53.     Since approximately 2010, and at all times relevant herein, Inna Lomanov ("Mrs. Lomanov") has resided at Trump Village.

54.     Mrs. Lomanov has dysthymic disorder, a chronic form of depression.  As a result, she has depression, anxiety, difficulty sleeping, difficulty making decisions, and significant relational problems.

55.     As such, Mrs. Lomanov is an individual with a mental impairment that substantially limits one or more of her major life activities.  She thus qualifies as a person with a disability under the Fair Housing Act, 42 U.S.C. 3602(h).

56.     Since approximately January 2014, Mrs. Lomanov has had an emotional support dog.

9

57.    By letter dated February 25, 2014, Trump Village sent a "Notice of No Pet Policy" which stated that it had come to Trump Village's attention that a "pet dog" was being kept in the Lomanov's apartment. The letter further provided: "As a no pet building a dog is not allowed unless it is a service animal and must have the necessary proof. Therefore, we are notifying you in writing that this is not permitted and considered a breach of your occupancy at the cooperative."

58.    On or about March 5, 2014, Trump Village served a "Notice of Termination" which stated that the lease for the Lomanov's apartment "is hereby terminated effective April 14, 2014" as a result of a default of the lease. The Notice of Termination further stated: "You have a dog in violation of your proprietary lease, paragraph 16."

59.    On or about April 21, 2014, Trump Village commenced a holdover proceeding in Civil Court of the State of New York, County of Kings, alleging that the proprietary lease for the Lomanov's apartment had been terminated and seeking a judgment awarding possession of the Lomanov's apartment to Trump Village and issuance of a warrant to remove the Lomanovs from their home.

60.    By letter dated April 25, 2014, Neil Lomanov requested a reasonable accommodation permitting Mrs. Lomanov to keep an emotional support dog. A letter from Mrs. Lomanov's physician explaining her medical need for an emotional support dog was included with the reasonable accommodation request. The physician's letter states, *inter alia*, that Mrs. Lomanov was diagnosed with dysthymic disorder and that her emotional support dog "became a major source of emotional support and a catalyst for overall progress in [Mrs. Lomanov's] functioning."

61.    After receiving the reasonable accommodation request and Mrs. Lomanov's physician's letter, Trump Village did not promptly discontinue the holdover proceeding. Rather, the holdover proceeding was not discontinued until on or about June 10, 2014, when Trump Village discontinued the matter without prejudice.

**Defendants' Retaliation Against Neil and Inna Lomanov**

62.    Before Mrs. Lomanov moved into the apartment, members of the Lomanov family lived there for more than 30 years. During that time, a license was issued by Trump Village assigning a parking space to the apartment.

63.    On or about September 8, 2014, Trump Village served a "Licensee Notice to Quit" on Neil Lomanov. The notice stated that the license for use of the parking space was terminated as of October 31, 2014.

64.    Trump Village terminated the license for the parking space because the Lomanovs exercised Mrs. Lomanov's right to obtain a reasonable accommodation under the Fair Housing Act.

65.    The Lomanovs have incurred substantial legal fees in connection with their opposition to Defendants' refusal to grant Mrs. Lomanov reasonable accommodation and Defendants' retaliation against them. Additionally, Defendants attempted to force the Lomanovs to pay the legal fees Trump Village incurred in connection with its improper acts.

**HUD Proceedings**

### The Ovsishchers

66.    On or about May 29, 2012, the Ovsishchers filed a complaint with the United States Department of Housing and Urban Development ("HUD") alleging that Trump Village and defendant Oberman violated the Fair Housing Act by denying their request to allow Mr. Ovsishcher to keep an emotional support animal.

67.     The Ovsishchers subsequently filed an amended complaint with HUD alleging that Trump Village and defendant Oberman further violated the Fair Housing Act by retaliating against them for seeking to enforce their rights under the Fair Housing Act.

68.     HUD investigated the Ovsishchers' complaint and amended complaint and prepared a final investigative report.

69.     Based on the information gathered in the HUD investigation, HUD determined, pursuant to 42 U.S.C. § 3610(g)(1), that reasonable cause existed to believe that Trump Village and defendant Oberman discriminated against the Ovsishchers and violated the Fair Housing Act.

70.     On or about January 6, 2015, the Secretary of HUD issued a Charge of Discrimination pursuant to 42 U.S.C. § 3610(g)(2)(A), charging Trump Village and defendant Oberman with engaging in discriminatory practices in violation of the Fair Housing Act.

71.     On or about January 27, 2015, Trump Village and defendant Oberman elected to have the charge resolved in a federal civil action pursuant to 42 U.S.C. § 3612(a). Following this election, pursuant to 42 U.S.C. § 3612(o)(1), the Secretary authorized the Attorney General to file this action on behalf of the Ovsishchers.

### The Lomanovs

72.     On or about May 5, 2015, Neil Lomanov filed a complaint with HUD alleging that Trump Village, defendant Oberman, and Trump Village's managing director and general manager violated the Fair Housing Act by denying his request to allow Mrs. Lomanov to keep an emotional support animal.

73.     The complaint was subsequently amended to add Mrs. Lomanov as a complainant.

74.     HUD commenced an investigation of the Lomanovs' complaint and amended
complaint but referred the matter to the United States Attorney's Office for the Eastern District
of New York prior to preparation of a final investigative report.

**Nicole Sable Bell**

75.     On or about February 27, 2015, Nicole Sable Bell filed a complaint with HUD
alleging that Trump Village, defendant Oberman, and another member of Trump Village's Board
of Directors violated the Fair Housing Act by denying her request to allow her to keep an
emotional support animal.

76.     HUD commenced an investigation of Ms. Bell's complaint but referred the matter
to the United States Attorney's Office for the Eastern District of New York prior to preparation
of a final investigative report.

## FIRST CLAIM FOR RELIEF

77.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 76
of this Complaint as if they were fully set forth herein.

78.     Through the actions described above, Defendants have violated the Fair Housing
Act, 42 U.S.C. §§ 3604(f)(1)(A) and (C), 3604(f)(2)(A) and (C), and 3604(f)(3)(B), by
threatening to evict the Ovsishchers and by refusing to make reasonable accommodations when
such accommodations were necessary to afford Eugene Ovsishcher an equal opportunity to use
and enjoy his dwelling.

79.     Defendants' discriminatory actions were intentional, willful, and taken in
disregard of the rights of Eugene Ovsishcher.

## SECOND CLAIM FOR RELIEF

80.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 76
of this Complaint as if they were fully set forth herein.

81.    Through the actions described above, Defendants have violated the Fair Housing Act, 42 U.S.C. §§ 3604(f)(1)(A) and (C), 3604(f)(2)(A) and (C), and 3604(f)(3)(B), by threatening to evict Nicole Sable Bell and by refusing to make reasonable accommodations when such accommodations were necessary to afford her an equal opportunity to use and enjoy her dwelling.

82.    Defendants' discriminatory actions were intentional, willful, and taken in disregard of the rights of Nicole Sable Bell.

## THIRD CLAIM FOR RELIEF

83.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 76 of this Complaint as if they were fully set forth herein.

84.    Through the actions described above, Defendants have violated the Fair Housing Act, 42 U.S.C. §§ 3604(f)(1)(A) and (C), 3604(f)(2)(A) and (C), and 3604(f)(3)(B), by threatening to evict the Lomanovs and by refusing to make reasonable accommodations when such accommodations were necessary to afford Inna Lomanov an equal opportunity to use and enjoy her dwelling.

85.    Defendants' discriminatory actions were intentional, willful, and taken in disregard of the rights of Inna Lomanov.

## FOURTH CLAIM FOR RELIEF

86.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 76 of this Complaint as if they were fully set forth herein.

87.    Through the actions described above, Defendants have violated the Fair Housing Act, 42 U.S.C. § 3617, by retaliating against the Ovsishchers for Eugene Ovsischer's exercise of rights granted or protected by the Fair Housing Act.

14

88.     Defendants' discriminatory actions were intentional, willful, and taken in disregard of the rights of the Ovsishchers.

### FIFTH CLAIM FOR RELIEF

89.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 76 of this Complaint as if they were fully set forth herein.

90.     Through the actions described above, Defendants have violated the Fair Housing Act, 42 U.S.C. § 3617, by retaliating against Nicole Sable Bell for her exercise of rights granted or protected by the Fair Housing Act.

91.     Defendants' discriminatory actions were intentional, willful, and taken in disregard of the rights of Ms. Bell.

### SIXTH CLAIM FOR RELIEF

92.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 76 of this Complaint as if they were fully set forth herein.

93.     Through the actions described above, Defendants have violated the Fair Housing Act, 42 U.S.C. § 3617, by retaliating against the Lomanovs for Inna Lomanov's exercise of rights granted or protected by the Fair Housing Act.

94.     Defendants' discriminatory actions were intentional, willful, and taken in disregard of the rights of the Lomanovs.

### SEVENTH CLAIM FOR RELIEF

95.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 76 of this Complaint as if they were fully set forth herein.

96.     Defendants' conduct as detailed above constitutes a pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601-3619, and/or a denial to a group of persons of rights granted by the Fair Housing Act, 42 U.S.C.

§§ 3601-3619, which denial raises an issue of general public importance.

97.     Defendants' discriminatory actions were intentional, willful, and taken in disregard for the rights of the victims of this discrimination.

WHEREFORE, the United States respectfully requests that this Court enter an order:

a.     Declaring that Trump Villages' policies and practices, as alleged in this Complaint, violate the Fair Housing Act;

b.     Enjoining Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with them, from:

i.   discriminating in the sale or rental, or otherwise making unavailable or denying a dwelling to any buyer or renter because of a disability of the buyer or renter, in violation of 42 U.S.C. § 3604(f)(1)(A);

ii.  discriminating in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2);

iii. failing or refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford persons with disabilities equal opportunity to use and enjoy their dwellings, as required by 42 U.S.C. § 3604(f)(3)(B);

iv.  coercing, intimidating, threatening or interfering with any person in the exercise or enjoyment of, or on account of any person having exercised or enjoyed, or on account of any person having aided or

encouraged any other person in the exercise or enjoyment of, any right granted or protected by Section 3604 of the Fair Housing Act;

v. failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, aggrieved persons to the position they would have been in but for the discriminatory conduct;

vi. failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of Defendants' unlawful practices, including modification of Trump Village's reasonable accommodation policy with respect to emotional support animals;

c.     Awarding monetary damages to the Aggrieved Residents pursuant to 42 U.S.C. §§ 3612(o)(3), 3613(c)(1), and 3614(d)(1)(B) for injuries caused by Defendants' violations of the Fair Housing Act;

d.     Assessing a civil penalty against Defendants for their knowing, intentional, and repeated violations of the Fair Housing Act, pursuant to 42 U.S.C. § 3614(d)(1)(C) and 28 C.F.R. § 85.3(b)(3); and

e.     Granting such additional relief as is just and proper.

The United States requests a trial by jury.

Dated: Brooklyn, New York
      December 22, 2015

LORETTA E. LYNCH
Attorney General of the United States

VANITA GUPTA
Principal Deputy Assistant Attorney General
Civil Rights Division

ROBERT L. CAPERS
United States Attorney
Eastern District of New York
*Attorney for Plaintiff*
271 Cadman Plaza East
Brooklyn, New York 11201

By:    Melanie D. Hendry
      Melanie D. Hendry
      Assistant United States Attorney
      (718) 254-6040
      Melanie.hendry@usdoj.gov

18